# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 15 CR 573-2 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| MYSHAWN BONDS | ) | |
| | ) | |

## OPINION AND ORDER

Defendant Myshawn Bonds is charged with two counts of bank robbery in violation of 18

U.S.C. § 2113(a).  The government alleges that on August 25, 2015, Bonds robbed a Chase Bank

in Joliet, Illinois of $4,682, and that on September 11, 2015, he robbed a BMO Harris Bank in

Carpentersville, Illinois of $2,247.  In preparation for trial, Bonds has filed a motion seeking to

exclude the government's expert testimony regarding fingerprint analysis pursuant to Federal

Rule of Evidence 702, contending the method used is not sufficiently reliable foundationally or

as applied to his case.  Because the Court finds the government's proposed fingerprint expert

testimony meets Rule 702's requirements, with Bonds' concerns going to weight and not

admissibility, the Court denies Bonds' motion.

## BACKGROUND

The government has disclosed to the defense that, at trial, it intends to present the

testimony of FBI forensic examiner Kira Glass as an expert in the field of latent fingerprint

analysis.  The government's expert disclosures indicate that Glass will testify concerning

fingerprint analysis in general, including the development of latent fingerprints and how such

latent fingerprints can be used for identification when compared with an individual's known

prints.  She specifically will testify about the ACE-V (analysis, comparison, evaluation, and

verification) method of fingerprint identification.  The ACE-V method "is the standard method

for determining whether two fingerprints are from the same person." *United States v. Herrera*, 704 F.3d 480, 484 (7th Cir. 2013). The method involves the following: (1) analysis of the unknown latent print to assess the quality and quantity of detail present; (2) comparison of the latent print to known prints to determine details that correspond; (3) evaluation of the two prints to determine if there is sufficient detail in agreement for an identification or in disagreement to exclude the known print; and (4) verification by another qualified examiner, repeating the observations between the latent and known print and coming to the same conclusion, although the second examiner may be aware of the first examiner's conclusion. *Id.* (citing National Research Council of the National Academy of Sciences, *Strengthening Forensic Science in the United States: A Path Forward* 137–38 (2009)).

Using the ACE-V method, Glass examined demand notes presented during both the Joliet and Carpentersville bank robberies. She is expected to testify that four latent prints recovered from the Joliet demand note and two latent prints recovered from the Carpentersville demand note match the known print standard for Bonds.

## LEGAL STANDARD

The admissibility of expert opinion testimony is governed by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). *See Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 893 (7th Cir. 2011). Rule 702 provides that a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of opinion or otherwise provided that "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably

applied the principles and methods to the facts of the case." Fed. R. Evid. 702. To admit expert

testimony under this rule, the Court must determine that (1) the witness is qualified, (2) the

expert's methodology is reliable, and (3) the testimony will assist the trier of fact to understand

the evidence or to determine a fact in issue. *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th

Cir. 2010). The Rule 702 inquiry "is a flexible one," however. *Daubert*, 509 U.S. at 594.

"Determinations on admissibility should not supplant the adversarial process; 'shaky' expert

testimony may be admissible, assailable by its opponents through cross-examination." *Gayton v.

McCoy*, 593 F.3d 610, 616 (7th Cir. 2010). The proponent of the testimony bears the burden of

proving that the proffered testimony meets these requirements, and the Seventh Circuit grants the

district court "wide latitude in performing its gate-keeping function." *Bielskis*, 663 F.3d at 894.

## ANALYSIS

**I.    Reliability of ACE-V Method**

Bonds first argues that the ACE-V method should be excluded because it is not a proven,

foundationally valid scientific method. Initially, the Court notes that fingerprint evidence need

not be a proven *scientific* method to qualify for admissibility as expert evidence. While *Daubert*

initially was framed as applying only to scientific evidence, it applies more broadly to all

"testimony based on 'technical' and 'other specialized' knowledge," with *Daubert*'s reliability

factors applying flexibly depending on the specific issues presented by the testimony under

consideration. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 119 S. Ct. 1167, 143 L. Ed.

2d 238 (1999); *see also id.* at 150 ("[T]he factors identified in *Daubert* may or may not be

pertinent in assessing reliability, depending on the nature of the issue, the expert's particular

expertise, and the subject of his testimony."). Thus, although fingerprint "matching depends on

'subjective judgments by the examiner;" as long as the "evidence [is] created or validated by

expert methods and presented by an expert witness that is shown to be reliable," it is admissible under Rule 702.  *Herrera*, 704 F.3d at 486–87.

Setting that initial argument aside, Bonds argues that ACE-V is not a reproducible and consistent means of determining whether two prints have a common source and that ACE-V's false positive rate is too high to justify reliance on it in a criminal trial.  Bonds focuses on a recent 2016 report issued by the President's Council of Advisors on Science and Technology (the "PCAST Report"), which studied latent fingerprint analysis as well as other identification procedures.  *See* President's Council of Advisors on Science and Technology, *Forensic Science in Criminal Courts: Ensuring Validity of Feature-Comparison Methods* (Sept. 20, 2016), attached as Ex. 4 to Bonds' Motion.  The PCAST Report reviewed two black-box studies of latent fingerprint examinations, which were specifically designed to evaluate validity and reliability.  An FBI study published in 2011 reported a false positive rate (the rate at which the method erroneously called a match between a known and latent print) of 1 in 306, while a 2014 Miami-Dade Police Department Forensic Services Bureau study had a false positive rate of 1 in 18.  Bonds also raises concerns about the subjective nature of fingerprint analysis, citing to various other reports questioning the assumptions on which ACE-V is based and calling for the implementation of additional safeguards in the field.

Bonds' first argument concerning matching of prints has been rejected by the Seventh Circuit, which noted that the "methodology requires recognizing and categorizing scores of distinctive features in the prints, and it is the distinctiveness of these features, rather than the ACE-V method itself, that enables expert fingerprint examiners to match fingerprints with a high degree of confidence."  *Herrera*, 704 F.3d at 485.  The *Herrera* court acknowledged that latent fingerprint matching is less reliable and rigorous than DNA evidence, but it found fingerprint

matching "admissible evidence, in general" despite the fact that "the matching process is judgmental rather than scientifically rigorous." *Id.* at 486–87. Although the PCAST Report focuses on scientific validity, the Court agrees with *Herrera*'s broader reading of Rule 702's reliability requirement.

More importantly, the PCAST Report found that "latent fingerprint analysis is a foundationally valid subjective methodology—albeit with a false positive rate that is substantial and is likely to be higher than expected by many jurors based on longstanding claims about the infallibility of fingerprint analysis." PCAST Report at 9. Although the PCAST Report suggested that accurate information about limitations on the reliability of the evidence be provided, this information concerning false positive rates, in addition to the other concerns raised in the PCAST Report and by Bonds in his motion, goes to the weight of the fingerprint evidence, not its admissibility. *See Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 766 (7th Cir. 2013) ("An expert may provide expert testimony based on a valid and properly applied methodology and still offer a conclusion that is subject to doubt. It is the role of the jury to weigh these sources of doubt."); *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 762 (7th Cir. 2010) (criticisms of the quality of an expert's opinion go to the appropriate weight to be accorded to the evidence and not to its admissibility). Bonds will have adequate opportunity to explore these issues on cross-examination.

## II.     Reliability of ACE-V as Applied by Glass in this Case

Bonds also argues that the Court should exclude the government's proposed fingerprint testimony because the government cannot demonstrate that Glass reliably applied ACE-V in examining the fingerprints in this case. Again, Bonds relies on the PCAST Report, which noted that in finding whether latent fingerprint analysis has been reliably applied, the Court should

consider whether (1) "the examiner has undergone regular and rigorous proficiency testing," (2) "the latent print(s) are of the quality and completeness represented in the foundational validity studies," and (3) "measures [have been] taken to mitigate bias during casework." PCAST Report at 101. Bonds complains that the government has not provided any information related to these factors.

The government responds that it has met its burden to demonstrate that the proffered fingerprint evidence in this case is reliable, and that Bonds' request that the government comply with PCAST's advisory recommendations goes beyond what is required to meet Rule 702. The Court is satisfied that the government has sufficiently established that Glass reliably applied the ACE-V method to this case, with Bonds able to raise concerns about her application of the ACE-V method to the prints at issue on cross-examination. But, while the Court agrees with the government that the PCAST Report presents only advisory recommendations concerning validity as applied, given that the Court does not have before it the entirety of the government's disclosures to Bonds, Bonds and the government should confer prior to trial to determine whether the government has any additional information concerning Glass' fingerprint examinations that should be disclosed to Bonds prior to Glass' testimony. *See United States v. Saunders*, 826 F.3d 363, 369–70 (7th Cir. 2016) (finding that government's failure to disclose the number of points that matched in fingerprint comparison prior to expert's testimony may have hindered "a defendant's ability to prepare an attack on the validity of the identification"); *United States v. Robinson*, 44 F. Supp. 2d 1345, 1346 (N.D. Ga. 1997) (government's failure to properly disclose the location of each point of comparison used by government's fingerprint expert left defendant's expert unable to review the basis of the opinion). To the extent Bonds

determines that Glass did not comply with the recommended PCAST procedures, Bonds can raise these concerns on cross-examination.

Therefore, the Court denies Bonds' motion to exclude the government's fingerprint testimony at trial, finding instead that the issues Bonds raises go to the weight to be accorded to the fingerprint evidence and not to its admissibility.

## III. Limitations on Fingerprint Evidence Testimony

Alternatively, Bonds requests that if the Court does allow Glass to testify, the Court (1) prevent Glass from testifying to a match between the latent print and the suspect print, instead limiting her to describing similarities and differences between the prints; and (2) require Glass to acknowledge that the level of certainty of a purported match is limited by the most conservative reported false positive rate in an appropriately designed empirical study thus far (*i.e.,* the 1 in 18 false positive rate from the 2014 Miami-Dade study). The Court declines to limit Glass' testimony as Bonds requests. Instead, Bonds can raise these issues with Glass on cross-examination and highlight them during his closing argument.

In a similar vein, the government asks the Court to preclude Bonds from raising any questions concerning the *Mayfield* case or any other unrelated case involving flawed fingerprint analysis while cross-examining Glass. The government argues that such cross-examination on collateral matters would distract and confuse the jury. Specifically, the government is concerned that Bonds will seek to cross-examine Glass about the FBI's misidentification of Brandon Mayfield as an individual connected to train bombings in Madrid in 2004. The FBI identified fingerprints found on a bag of detonators in a van used by the bombers as Mayfield's, leading to his arrest, but two weeks later, the Spanish police informed the FBI that it had identified another individual as the source of the fingerprints, causing the FBI to withdraw its identification of

7

Mayfield.  Subsequently, the U.S. Department of Justice's Office of the Inspector General conducted a review of the case, issuing a report that detailed various problems with the use of ACE-V in the case.  Bonds references the *Mayfield* case extensively in arguing that the ACE-V method is not reliable.  He argues that discussion of the *Mayfield* case is a critical part of any cross-examination to demonstrate to the jury that misidentifications happen and have happened before.

The government, relying on *United States v. Rivas*, in which the Seventh Circuit found it did not violate the defendant's confrontation rights or constitute an abuse of discretion to preclude the defense from inquiring specifically about the *Mayfield* case, argues that the Court should similarly limit questioning because Glass was in no way involved in *Mayfield*.  *See* 831 F.3d 931, 935 (7th Cir. 2016).  The Court agrees that questioning Glass about a case in which she was not involved would distract from the issues before the jury, has little if any relevance, and would not be appropriate here.  *Id.*  The Court does not find Bonds' argument persuasive that questioning about the *Mayfield* case would ensure that the jury understands that fingerprint misidentifications happen, where the Court is not precluding Bonds from raising general questions on that issue.  As discussed above and as the government acknowledges, the Court's ruling does not prevent Bonds from questioning Glass about the reliability of the ACE-V methodology generally but only is intended to keep the testimony from devolving into a side trial concerning cases in which Glass had no involvement.

**CONCLUSION**

For the foregoing reasons, the Court denies Bonds' motion to preclude expert testimony regarding fingerprint analysis [153]. The Court grants the government's request to preclude Bonds from discussing the Mayfield case and other unrelated cases involving flawed fingerprint analysis during Glass' cross-examination.


Dated: October 10, 2017

_____
SARA L. ELLIS
United States District Judge