# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 15 CR 573-2 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| MYSHAWN BONDS | ) | |
| | ) | |

## OPINION AND ORDER

In a superseding indictment, the Government charged Defendant Myshawn Bonds with two counts of bank robbery, in violation of 18 U.S.C. § 2113(a). Count One charged Bonds with the robbery of a Chase Bank in Joliet, Illinois, on August 25, 2015, and Count Two charged Bonds with the robbery of a BMO Harris Bank in Carpentersville, Illinois, on September 11, 2015. Following a three-day trial, on October 25, 2017, a jury convicted Bonds on both counts. Bonds now moves for a judgment of acquittal, or, alternatively, a new trial [186]. He argues that the Government did not present sufficient evidence to convict him on either count and that the Court erred in admitting fingerprint and identification evidence and in instructing the jury with respect to the identification testimony. Because the jury had before it sufficient evidence to conclude that Bonds was involved in both charged robberies, the Court stands on its prior rulings with respect to the admissibility of the fingerprint and identification evidence. Additionally, Bonds does not identify how the jury instruction on identification testimony misstated the law; therefore, the Court denies Bonds' motion.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 29 allows a defendant to challenge whether the evidence after the close of the Government's case or after the close of all evidence is "insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "A motion for acquittal should be

granted only where the evidence is insufficient to sustain a conviction." *United States v. Kohli*, 847 F.3d 483, 489 (7th Cir. 2017) (internal quotation marks omitted) (citation omitted), *reh'g and suggestion for reh'g en banc denied* (Mar. 27, 2017). The Court will only overturn the jury's verdict if "after viewing the evidence in the light most favorable to the government, the record is devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt." *United States v. Wrobel*, 841 F.3d 450, 454 (7th Cir. 2016) (quoting *United States v. Campbell*, 770 F.3d 556, 571–72 (7th Cir. 2014)). "When a defendant has introduced evidence in his own defense at trial, we examine the evidence as a whole, including that presented by the defendant." *United States v. Wilson*, 879 F.3d 795, 802 (7th Cir. 2018). "When challenging a conviction based on sufficiency of the evidence, a defendant bears a 'heavy' burden that is 'nearly insurmountable.'" *Kohli*, 847 F.3d at 489 (quoting *United States v. Moses*, 513 F.3d 727, 733 (7th Cir. 2008)).

Federal Rule of Criminal Procedure 33 allows "a district court to grant a timely request for a new trial 'if the interest of justice so requires.'" *United States v. O'Malley*, 833 F.3d 810, 811 (7th Cir. 2016) (quoting Fed. R. Crim. P. 33(a)). Courts look at the weight of the evidence, including the credibility of witnesses, to determine "whether the verdict is against the manifest weight of the evidence." *United States v. Washington*, 184 F.3d 653, 657, 658 (7th Cir. 1999). The Court should grant a new trial only if the evidence "preponderate[s] heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *United States v. Swan*, 486 F.3d 260, 266 (7th Cir. 2007) (alteration in original) (quoting *United States v. Reed*, 875 F.2d 107, 113 (7th Cir. 1989)).

# ANALYSIS

## I. Sufficiency of the Evidence

First, Bonds argues that the Government failed to introduce sufficient evidence to sustain his convictions on both robbery counts. To convict Bonds of bank robbery under 18 U.S.C. § 2113(a), the jury had to find beyond a reasonable doubt that (1) Bonds took from the person or presence of another money belonging to or in the care, custody, control, management or possession of Chase Bank (Count One) and BMO Harris Bank (Count Two); (2) at the time Bonds took the money, the Federal Deposit Insurance Corporation insured both Chase Bank and BMO Harris Bank; and (3) Bonds acted to take such money by force and violence, or by intimidation. Seventh Circuit Pattern Criminal Jury Instructions 18 U.S.C. § 2113(a) (2012); *United States v. Carter*, 410 F.3d 942, 952 (7th Cir. 2005); *see also* Doc. 170 at 18–19. Bonds challenges only the first element, arguing that the Government failed to establish that he was one of the individuals who committed the bank robberies.

Specifically, Bonds challenges the credibility of the teller witnesses and argues that the identification testimony was tainted and improperly suggestive. He also argues that the fingerprint identification evidence "was rife with issues of confirmation and contextual bias, error rate, and print suitability." Doc. 186 at 4. Finally, Bonds highlights the evidence he presented that he has a tattoo on his right forearm, which predates the bank robberies, but that none of the bank employees identified and that Bonds claims cannot be seen in the surveillance video of either robbery. All of these arguments, however, go to credibility, the resolution of evidentiary conflicts, and inferences that the jury could draw from the evidence presented by the parties, issues that remain in the jury's exclusive domain and that the Court cannot consider in considering a sufficiency of the evidence challenge. *See United States v. Pope*, 739 F.2d 289,

291 (7th Cir. 1984) (the jury has the "exclusive authority to assess the witnesses' credibility, resolve evidentiary conflicts and draw reasonable inferences from the evidence presented").

Instead, the Court must look at the evidence in the light most favorable to the prosecution and determine whether it sufficiently provided a basis for the jury to conclude that Bonds was one of the individuals who robbed both the Chase Bank on August 25, 2015 and the BMO Harris Bank on September 11, 2015. The Court concludes that it did.

With respect to Count One, the Chase Bank robbery, Shannon O'Connor, a former Chase Bank employee, testified at trial that, on August 25, 2015, two African American men entered the bank. She asked these men if they needed assistance, and one of the men, who had a tattoo on his left cheek, indicated he needed to cash a check. O'Connor directed the men to the teller area, where a teller, Eileen Luzzo, assisted them. Shortly thereafter, O'Connor recalled the men running out of the bank. About a month later, on September 22, 2015, O'Connor identified Bonds in a photo array as the man with whom she spoke prior to the robbery.[1] Luzzo testified that, when O'Connor directed the men to the teller area, she walked to her teller station to help them. She remembered one of the men handing her a demand note, providing that individual with cash from her teller drawer, him putting it in his backpack, and the men fleeing from the bank while leaving the note behind. Luzzo could not identify either of the robbers in a photo array. As Bonds points out, Luzzo admitted on cross-examination that she initially told police that she thought one of the men was wearing a gray sweatshirt, which was disproven by video surveillance, but because she never made an identification, Luzzo's inability to recall such details does not undercut any identification testimony.

---

[1] Bonds does not challenge the photo array procedure or argue that it was in any way suggestive. He does argue that O'Connor only observed the two men for approximately five seconds, suggesting that her identification should not be given much weight. But this was a point raised on cross-examination, *see* Trial Tr. 127:7–128:11, which the jury could take into consideration in determining how much weight to give to O'Connor's identification testimony.

The Government also introduced the testimony of FBI latent print examiner Kira Glass, who examined the demand note left behind by the robbers at the scene of the crime. Glass testified that she developed four latent prints from that note and determined that they belonged to Bonds.[2] Additionally, the Government introduced video surveillance from the bank, which showed the robbery in progress. These videos corroborated O'Connor and Luzzo's accounts of the robbery while also providing the jury with the opportunity to consider, using their own powers of observation, whether Bonds was one of the individuals involved in the robbery.

As for Count Two, the BMO Harris Bank robbery, Aracely Escontrias, who worked as a teller there, testified that on September 11, 2015, around 1:00 p.m., two African American men entered the bank and approached her teller window. They first asked her how to open an account, so she walked them to a sign-in area in the lobby. But after she returned to her teller station, the men also returned, with the taller male handing her a demand note while the shorter one, wearing a red hat, opened his backpack. Escontrias thought she saw a gun in the backpack and recalled the shorter male reaching over the teller counter and demanding that she give him money. Escontrias did as directed, handing cash from her teller drawer to the shorter man. The men then left the bank. Escontrias could not identify the robbers, although she estimated that the shorter one was approximately six feet tall, based on tick marks on the side of the main doors of the entrance of the bank branch. According to Bonds' driver's license, he stands only five feet nine inches tall.

Additionally, Glass, the fingerprint examiner, testified that of fourteen latent prints she developed from the BMO Harris Bank demand note, she determined that two belonged to Bonds,

---

[2] Although Bonds objects to the admission of the fingerprint testimony, because, as the Court discusses below, the fingerprint testimony was properly before the jury, the Court considers it in determining whether the Government presented sufficient evidence for the jury to determine that Bonds was the robber.

and eleven to Danquel Brown, who pleaded guilty to the robbery. Glass testified that the remaining latent print on the note could not be attributed to Bonds or Brown. The Government also introduced surveillance video from BMO Harris Bank, again allowing the jury to observe for themselves the individuals committing the robbery.

In addition to this evidence, for both robberies, the Government presented testimony from several witnesses who identified Bonds as one of the robbers from still photographs taken from surveillance videos to varying degrees of certainty.[3] Three of these individuals, Emily Belrichard, Gabrielle Meyer, and Troy Reeves, had all worked with Bonds while he was in the foster care system. Further, Eleanor and Norman Brown, Bonds' maternal grandparents, provided similar identifications. These witnesses identified Bonds as the individual in the Chase Bank robbery whom Luzzo described as handing over the note and in the BMO Harris Bank robbery as the shorter man wearing the red hat. Eleanor Bonds also testified that Bonds has a tattoo under one of his eyes, which the jury could also observe, in line with the tattoo that O'Connor described one of the Chase Bank robbers as having. Although the certainty with which each individual identified Bonds varied, Bonds had the opportunity to probe their identifications, their familiarity with Bonds, and any biases and external influences that may have shaped their identifications. The jury was free to weigh this information when considering their respective testimony, an issue underscored for the jury in the jury instruction given to them on how to assess the identification testimony. *See* Doc. 170 at 11.

Bonds argues that, in addition to the alleged shortcomings in the fingerprint and identification testimony, he presented testimony and physical evidence that he had a tattoo on his right forearm that predated the robberies. Because none of the bank employees who testified

---

[3] The Court discusses in further detail Bonds' renewed objection to the admission of the eyewitness testimony below. As with the fingerprint testimony, Bonds' argument is not well-founded, and so the Court considers the identification testimony in addressing Bonds' sufficiency of the evidence challenge.

6

described any of the robbers as having tattoos on their forearms, Bonds appears to contend that this evidence means the jury could not conclude that he was one of the robbers. But the jury was also shown still frames from the surveillance videos that would allow them to determine for themselves whether the tattoo was visible in the videos and how they should weigh Bonds' evidence against that presented by the Government. The Court cannot say that, in light of the evidence, including Bonds' forearm tattoo, it was unreasonable for the jury to conclude that Bonds was one of the individuals who took part in both of the robberies. Therefore, the Court rejects Bonds' sufficiency of the evidence challenge and does not find it appropriate to grant his motion for acquittal or a new trial on this basis.

## II.     Admission of Fingerprint Evidence

Next, Bonds renews his objection to the admission of the fingerprint evidence, including the expert testimony of fingerprint examiner Kira Glass, and the Court's imposition of limitations on Bonds' cross-examination of Glass. Instead of making additional substantive arguments as to why the Court erred in its decision, Bonds merely incorporates his prior arguments and acknowledges that he recognizes that the Court followed the guidance of *United States v. Herrera*, 704 F.3d 480, 484 (7th Cir. 2013). *See* Doc. 186 at 5–6. The Court similarly incorporates its prior extensive analysis in denying Bonds' pre-trial motion to exclude fingerprint analysis and its trial rulings limiting Bonds' cross-examination of Glass. *See* Doc. 161; Trial Tr. 85–94, 96–100, 103–111. The Court stands by its reasoning in finding that it properly admitted the fingerprint evidence, with Bonds having had the opportunity to extensively cross-examine Glass on the shortcomings of the fingerprint methodology Glass used, both generally and as it applied to the demand notes at issue in the two robberies. Similarly, this does not provide a basis to grant Bonds' motion for acquittal or a new trial.

7

## III. Admission of Identification Evidence

Bonds also renews his objection to the admission of identification evidence at trial, reasserting his arguments that the out-of-court identifications made by various government witnesses were irreparably tainted and unreliable. *See* Doc. 186 (incorporating arguments made at Docs. 155 and 160). The Court extensively addressed and rejected Bonds' arguments before trial, *see* Doc. 162, and incorporates that analysis here. The Court did allow Bonds to cross-examine the witnesses providing identification testimony about reliability concerns, the procedures used to make the identifications, biases, and the consistency of the identifications. The Court also specifically instructed the jury concerning the witness identifications. *See* Doc. 170 at 11. Although Bonds separately challenges that jury instruction, addressed below, the Court does not find any error in the admission of the identification evidence.

## IV. Jury Instruction on Identification Testimony

Finally, Bonds argues that the Court erred in instructing the jury with respect to the identification testimony. The Court agreed to give a cautionary instruction on the identification testimony the Government introduced. *See* Doc. 162 at 6. Bonds proposed such an instruction, loosely based on Seventh Circuit Criminal Pattern Jury Instruction 3.12, and the Government objected to the inclusion of certain language. *See* Doc. 186-2 (with the bolded language indicating disagreements between the parties). The Court then heard arguments from the parties and crafted the language for the instruction that was ultimately given to the jury. *See* Trial Tr. 281–293; Doc. 170 at 11 (final instruction given). "A district court has substantial discretion in formulating the precise wording of jury instructions so long as the final result, read as a whole, completely and correctly states the law." *Kohli*, 847 F.3d at 494. Bonds' argument on the jury instruction is conclusory, merely incorporating his previous arguments related to the jury

instruction by reference, and he presents no new arguments as to why the Court's final jury instruction on identification testimony did not accurately state the law or somehow prejudiced him. Nor can Bonds argue that the instruction inaccurately states the law; he merely argues that the Court should have used different language that would have been more favorable to the defense but for which he could not provide the Court with any citations to support its inclusion. Accordingly, the Court denies Bonds' motion for acquittal and a new trial on this basis based on its prior oral rulings with respect to the identification instruction.

## CONCLUSION

For the foregoing reasons, the Court denies Bonds' motion for acquittal or a new trial [186].

Dated: March 27, 2018

_____
SARA L. ELLIS
United States District Judge